IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMILA AKEEN MAYFIELD, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.: 4:17-CV-1059 |
| | § | |
| NANCY A. BERRYHILL, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM AND ORDER

Plaintiff Jamila Akeen Mayfield filed this case under 42 U.S.C. § 405(g) of the Social Security Act for review of the Commissioner's final decision denying his request for social security disability insurance benefits. Mayfield and the Commissioner moved for summary judgment (Dkt. 11, 12). After considering the pleadings, the record, and the applicable law, the court **DENIES** Mayfield's motion, **GRANTS** the Commissioner's motion, and **AFFIRMS** the final decision of the Commissioner.[1]

## I. BACKGROUND

### 1. Factual and Administrative History

Mayfield filed an initial claim for disability on January 15, 2014 alleging disability as of August 1, 2009 due to diabetes, blindness in his right eye, swelling in his feet, and congestive heart failure. Dkt. 6-4 at 2. Following the denial of his application and subsequent request for reconsideration, Mayfield requested a hearing before an Administrative Law Judge (ALJ). A hearing took place on June 3, 2015 at which Mayfield, Mayfield's father, and a vocational

---

[1] The parties have consented to the jurisdiction of this magistrate judge for all purposes, including entry of final judgment. Dkt. 16.

expert, Eligio Hinojosa, testified. At the hearing, Mayfield amended his alleged onset date to February 6, 2014. Dkt. 6-6 at 21; Dkt. 6-3 at 33-34. On July 16, 2015, the ALJ issued a decision finding that Mayfield was not disabled within the meaning of the Social Security Act from January 15, 2014, the date of his initial application, through the date of the decision. *Id.* The Appeals Council denied review on January 27, 2017, and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

### 2. Standard for District Court Review of the Commissioner's Decision

Section 405(g) of the Act governs the standard of review in social security disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).

With respect to all decisions other than conclusions of law,[2] "[i]f the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence has also been defined as "more than a mere scintilla and less than a preponderance." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). When reviewing the Commissioner's decision, the court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272. Conflicts in the evidence are for the

---

[2] Conclusions of law are reviewed *de novo*. *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

Commissioner to resolve, not the courts. *Id.* The courts strive for judicial review that is "deferential without being so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

The court weighs four types of evidence in the record when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir.1991); *Hamilton-Provost v. Colvin*, 605 Fed. App'x 233, 236 (5th Cir. 2015).

### 3. Disability Determination Standards

The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing 42 U.S.C. § 423(d)(1)(A)). A finding at any point in the five-step sequence that the claimant is disabled, or is not disabled, ends the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity." Work is "substantial" if it involves doing significant physical or mental activities, and "gainful" if it is the kind of work usually done for pay or profit. 20 C.F.R. §§ 404.1572, 416.972; *Copeland v. Colvin*, 771 F.3d 920, 924 (5th Cir. 2014).

In the second step, the ALJ must determine whether the claimant has a severe impairment. Under applicable regulations, an impairment is severe if it "significantly limits your

physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.20(c).

Under Fifth Circuit binding precedent, "[a]n impairment can be considered as not severe *only if* it

is a slight abnormality having such minimal effect on the individual that it would not be expected

to interfere with the individual's ability to work, irrespective of age, education or work

experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (emphasis added)

(quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)). "Re-stated, an impairment is

severe if it is anything more than a "slight abnormality" that "would not be expected to interfere"

with a claimant's ability to work. *Id.* This second step requires the claimant to make a *de*

*minimis* showing. *See Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992)." *Salmond v.*

*Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).

If the claimant is found to have a severe impairment, the ALJ proceeds to the third step of

the sequential analysis: whether the severe impairment meets or medically equals one of the

listings in the regulation known as Appendix 1. 20 C.F.R. Part 404, Subpart P, Appendix 1. If

the impairment meets one of the listings in Appendix 1, the claimant is disabled. If the ALJ

finds that the claimant's symptoms do not meet any listed impairment, the sequential analysis

continues to the fourth step.

In step four, the ALJ must decide whether the claimant can still perform his past relevant

work by determining the claimant's "residual functional capacity" (RFC). "The RFC is the

individual's ability to do physical and mental tasks on a sustained basis despite limitations from

her impairments." *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R.

404.1545). The ALJ must base the RFC determination on the record as a whole and must

consider all of a claimant's impairments, including those that are not severe. *Id.*; 20 C.F.R. §§

404.1520(e) and 404.1545; s*ee also Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).

The claimant bears the burden to prove disability at steps one through four, meaning the claimant must prove she is not currently working and is no longer capable of performing her past relevant work. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). If the claimant meets her burden, the burden shifts to the commissioner at step five to show that the "claimant is capable of engaging in some type of alternative work that exists in the national economy." *Id*. Thus, in order for the Commissioner to find in step five that the claimant is not disabled, the record must contain evidence demonstrating that other work exists in significant numbers in the national economy, and that the claimant can do that work given her RFC, age, education, and work experience. *Fraga v. Brown*, 810 F.2d 1296, 1304 (5th Cir. 1998).

### 4. The ALJ's Decision

The ALJ performed the standard 5-step sequential analysis. The ALJ found that Mayfield had not engaged in substantial gainful activity since January 15, 2014 and had the severe impairments of congestive heart failure and poorly controlled diabetes with polyneuropathy of the feet. Dkt. 6-3 at 16. Additionally, the ALJ found that Mayfield had the non-severe impairment of loss of vision in the right eye. *Id.* at 17. After considering the Mayfield's severe and non-severe impairments, the ALJ determined that no impairments, alone or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. §§ 416.920(d), 416.925, 416.926. *Id.* at 18.

The ALJ further found that Mayfield had the residual functional capacity to perform light work as defined in 20 C.F.R. § 414.1567(b). *Id.* at 19-20. Specifically, Mayfield could occasionally lift and carry 20 pounds, and frequently lift and carry ten pounds. *Id.* The ALJ found that Mayfield could stand for six hours in an eight-hour workday with normal breaks; walk for six hours in an eight-hour workday with normal breaks, and sit for six hours in an eight-hour

workday with normal breaks. *Id.* According to the ALJ, Mayfield could use foot controls or foot pedals on limited occasions; but should not climb scaffolding, ropes, or ladders, and should not walk on uneven surfaces. *Id.* Finally, Mayfield should not work around dangerous machinery or unprotected heights. *Id.* Based on the testimony of a vocational expert, the ALJ found that there are significant numbers of jobs in the national economy that Mayfield could perform, including cashier, ticket seller and office cleaners. *Id.* at 23. Thus, the ALJ found that Mayfield was not disabled. *Id.*

## II. ANALYSIS

Mayfield asserts three errors in his appeal to this court. First, Mayfield argues that the ALJ erred in finding Mayfield's visual impairment non-severe without obtaining a visual examination. Second, Mayfield argues that the Appeals Council failed to adequately consider newly submitted evidence from a visual examination conducted after the hearing. Third, Mayfield argues that the ALJ did not properly evaluate his obesity.

### 1. Lack of Consultative Visual Exam

Mayfield argues that the ALJ erred by failing to order a consultative visual exam to support his claim of a severe visual impairment. Dkt. 13 at 20. At the conclusion of Mayfield's ALJ hearing, his council requested the ALJ to order a consultative visual exam to support his claim of visual impairment. Dkt. 6-3 at 64. The ALJ responded that there was no need to incur the expense of a visual exam because "he meets the listing. He meets the cardiac listing." *Id.* However, in the July 16, 2015 decision the ALJ explained "In my initial evaluation of this case, I believed the claimant met [Listing 4.02 for chronic heart failure]. However, while the claimant has had significantly low ejection fraction recordings, he has not reported consistently other health conditions necessary to meet the Listing. Also, I noted the claimant's significant non-

compliance with medication and diet, which did not enhance his overall credibility." *Id.* at 19. Mayfield argues the ALJ erred by not allowing him the opportunity to obtain and submit additional evidence supporting his visual impairment.

"The claimant has the burden of proof in establishing his disability." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). If the claimant does not provide sufficient evidence, the ALJ must make a decision based on the available evidence. See 20 C.F.R. § 404.1516. The ALJ has the discretion to order a consultative examination. *See Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir.1987) (per curiam). An examination at government expense is not required "unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision." *Id.* at 526 (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir.1977)).

Here, the ALJ properly exercised her discretion in declining to obtain a consultative exam because nothing in the record "establish[ed] that such an examination [was] necessary to enable the administrative law judge to make the disability decision." *See Jones*, 829 F.2d at 526 (quoting *Turner*, 563 F.2d at 671). Mayfield's medical file indicated that Mayfield's vision was impaired, and the ALJ considered that evidence. *See* Dkt. 6-3 at 18; Dkt. 6-13 at 16, 19. However, Mayfield's allegations regarding the degree of his vision loss were not entirely credible, because Mayfield testified he could read on his computer, and play dominos, video games, and darts.[3] Dkt. 6-3 at 49, 53. Mayfield indicated he could see things up to 3 feet in front of him, but at 10 feet things were blurry. *Id.* at 37-38. The ALJ also considered Mayfield's lack of treatment history, because "[w]hen a claimant alleges a condition severe enough to be disabling, there is a reasonable expectation that the claimant will not only seek examination and

---

[3] At appointments with his primary diabetes doctor, Dr. Shazia Amina, on January 16, 2014, February 24, 2014, and November 19, 2014, Mayfield did not report any symptoms related to his eyes. Dkt. 6-10 at 2, 11; Dkt. 6-12 at 66.

treatment, but also follow the advice of medical professionals." Dkt. 6-3 at 22; *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (The ALJ may rely upon the lack of treatment as an indication of nondisability).

In addition, Mayfield's counsel was given the opportunity to include his vision limitations in the hypothetical asked of the vocational expert. Mayfield's counsel asked Eligio Hinajosa, if a person with Mayfield's restrictions who "could do close up reading, but [ ] can't see much beyond a couple feet away" could perform jobs in the national economy. Dkt. 6-3 at 63. Hinajosa's response indicated that the limitations described by Mayfield's counsel would not change his answer to the hypothetical question and therefore, indicated that Mayfield could perform jobs in the national economy even with the described vision limitations. *Id.* The court concludes that the ALJ did not commit reversible error by failing to order a consultative eye exam.

### 2. Appeals Council Review of Newly Submitted Evidence Regarding Vision Loss

After the ALJ issued her opinion, Mayfield independently obtained an eye exam on August 19, 2015, telling the eye doctor that he needed the exam to get cataract surgery. Dkt. 6-3 at 10. The exam indicated that Mayfield has unaided visual acuity of 20/400 in each eye, and best corrected visual acuity of 20/200 in the right eye and 20/100 in the left eye; dense cataracts, greater in the right eye; and "scattered hemorrhages" in the retinas of both eyes. *Id.* Mayfield argues that Appeals Council erred by failing to consider the results of this subsequent eye exam when it declined to review the ALJ's decision.

In deciding whether to grant review, the Appeals Council will consider "new and material evidence" "only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b); *Sun v. Colvin*, 793 F.3d 502, 511

(5th Cir. 2015). The August 19, 2015 eye exam does not "relate[] to the period on or before the ALJ's decision" on July 16, 2105.[4] Thus, the August 19, 2015 report provides no basis for reversal of the ALJ's decision regardless of whether it was considered by the Appeals Council.

In addition, the fact that the Appeals Council did not discuss the August 19, 2015 record is not a basis for reversal of the ALJ's decision. The Appeals Council is not required to provide a discussion of newly submitted evidence or give reasons for its decision when it denies review. *See Sun*, 793 F.3d at 511 (5th Cir. 2015) ("The regulations do not require the AC to provide a discussion of the newly submitted evidence or give reasons for denying review.").

The Appeals Council will grant review only if it finds that the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. §§ 404.970(b), 416.1470(b). In *Sun*, the Appeals Council made newly submitted medical records a part of the record, but denied review without discussion of the new evidence. The Fifth Circuit reversed and remanded, not because the Appeals Council failed to discuss the new evidence, but because "the newly submitted evidence is significant, and casts doubt on the soundness of the ALJ's findings," which were based at least in part on claimant's lack of medical records. *See Sun*, 793 F.3d at 512. Because "assessing the probative value of competing evidence is quintessentially the role of the fact finder," the Fifth Circuit remanded the case without expressing an opinion as to whether Sun could establish that she was disabled. *Id.* at 513. In contrast, the ALJ's decision in this case was not based on a lack of medical records from the period in question, but primarily on Mayfield's own testimony regarding the degree of his impairment. The ALJ addressed Mayfield's visual impairment, noting that "[t]he claimant was also diagnosed with loss of vision in the right eye . . . . However, the claimant has reported

---

[4] As the Commissioner points out, "[i]f the claimant believes the additional evidence shows a deterioration in his condition, he is free to reapply for disability benefits on the basis of this new evidence." Dkt. 15 at 3.

playing video games, taking care of dogs, and walking and exercising." Dkt. 6-3 at 18. The ALJ recognized that Mayfield was visually impaired but not so functionally impaired that he was precluded from engaging in any substantial gainful activity. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (plaintiff must prove he is so functionally impaired that he cannot engage in substantial gainful activity). Mayfield has not shown that the August 19, 2015 report supports a finding that he meets a Listing or otherwise establishes functional limitations that prevent him from engaging in substantial activity. The court concludes that the AC's failure to consider his subsequent eye exam does not entitle Mayfield to reversal of the ALJ's decision.

### 3. The ALJ's Evaluation of Mayfield's Obesity

Finally, Mayfield argues that the ALJ failed to evaluate whether Mayfield's obesity was a medically determinable or severe impairment. At the time of the hearing, Mayfield was six (6) feet, five (5) inches tall and weighed 385-390 pounds. Dkt. 13 at 22. SSR 02-01 states that "when we identify obesity as a medically determinable impairment, we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments that we identify." Social Security Ruling, SSR 02-1p; 67 FR 57859-02 at 57863. According the SSR 02-01, a BMI of 30.0 or higher qualifies as obese. *Id*. Mayfield's height and weight give him a BMI over 45. Obesity becomes a severe impairment when "alone, or in combination with another medically determinable physical or mental impairment[s], it significantly limits the individual's physical or mental ability to do basic work activities." Id. at 57862. Obesity is "not severe" if it has no more than a minimal effect on the individual's ability to do basic work activities. *Id*.

At the hearing before the ALJ, Mayfield testified about his fluctuating weight. Dkt. 6-3 at at 35. He also testified about his physical abilities and his activities of daily living. Mayfield

testified that he could squat; climb a flight of stairs; clean the bathroom; take out the garbage; feed the dogs; go outside with the dogs; and take care of his own personal grooming, hygiene, and dressing. *See id.* at 43-44, 47-50. He walks for 90 minutes total, five times per week, and can walk slowly for 30-40 minutes at one time. *Id.* at 43.

The ALJ's decision repeatedly mentions Mayfield's height and weight, indicating that she considered his obesity at both step 2 and in assessing his RFC prior to step 4 of the sequential analysis. Dkt. 6-3 at 17-23. Mayfield's testimony suggested that his obesity, coupled with his congestive heart failure, did not significantly affect his daily activities. *Id.* No medical records stated that Mayfield had limitations on his ability to perform activities—to the contrary, they encouraged him to exercise. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (An ALJ's determination of non-disability is supported when no physician of record states that the claimant is disabled). Because Mayfield has failed to demonstrate that the singular or cumulative effects of his obesity significantly limited his ability to do basic work activities, he has not shown that the ALJ failed to consider his obesity or erred in her analysis.

### III. Conclusion

The court concludes that the ALJ's decision is supported by substantial evidence and is not based on an error of law. Therefore, Mayfield's motion is **DENIED**, the Commissioner's motion is **GRANTED**, and the Commissioner's decision denying benefits is **AFFIRMED**.

Signed on September 04, 2018, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge